UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH F. McCLOUD, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | )   No.: 20cv-1043-JBM |
| | ) |
| BRANDON HARMON, et al., | ) |
| | ) |
| **Defendants.** | ) |

### MERIT REVIEW ORDER

Plaintiff, currently incarcerated at the Pontiac Correctional Center ("Pontiac"), proceeds *pro se* in a § 1983 action claiming deliberate indifference to his serious mental health needs and the unconstitutional use of force. The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.  In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor.  *Turley v. Rednour,* 729 F.3d 645, (7th Cir. 2013). However, conclusory statements and labels are insufficient.  Enough facts must be provided to "'state a claim for relief that is plausible on its face.'"  *Alexander v. U.S.,* 721 F.3d 418, 422 (7th Cir. 2013)(quoted cite omitted).  While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

On July 29, 2019, Plaintiff asked Defendant officers Harmon and Trusty to get him a crisis team as he was planning to hang himself.  Parenthetically, Plaintiff makes no allegations to infer that either Harmon or Trusty, or any of the other Defendant named in the complaint, were aware of any mental health issues Plaintiff might have had. Defendants did not take Plaintiff at his word and, instead, ordered him to cuff-up so he could be escorted to the shower. It appears

1

that Plaintiff did not cuff-up at that point and he states, confusingly, that after he exited his cell, Defendants "walked off." It is unclear whether anyone else was attending Plaintiff and he appears to imply that he was left alone and unrestrained, outside of his cell.

Plaintiff indicates that when he initially exited the cell, he assumed he would be cuffed with a security belt and taken to a holding cell to be seen by a mental health provider. Plaintiff does not describe the referenced security belt and the Court assumes that it is a "waist chain" whereby an inmate's hands are cuffed in front of his body, with the cuffs attached to a chain at his waist. Plaintiff explains that he had a medical permit for a security belt as he had an undescribed "deformity" of his right hand.

As noted, Defendants Harmon and Trusty had walked away for unknown reasons. They returned some time later and ordered Plaintiff to return to his cell. Plaintiff told them that if he was returned to his cell he would hang himself. Notwithstanding, Defendants gave him three more orders to "cuff-up" and return to his cell. When Plaintiff did not comply, Defendants walked off again. Approximately 10 minutes later, Defendant Sergeant Tarter and Defendant Lieutenant Laborence approached Plaintiff, asking why he was refusing to cuff-up and return to his cell. Plaintiff rrepeated that if he were returned to his cell, he would attempt suicide. He asked to be placed in a security belt and taken to be seen by mental health staff. Defendants refused, informing Plaintiff that if he did not comply, a tactical team would be called. When Plaintiff did not relent, Defendants Tarter and Laborence walked off.

Plaintiff indicates that shortly thereafter, Defendant Lieutenants Dalton and Eutsey approached with two other officers, one holding a camcorder. Defendants ordered Plaintiff to put his hands behind his back so he could be cuffed and returned to his cell. Plaintiff refused, asserting that he had a medical permit by which he was to be cuffed using a security belt and,

2

further, that he would hang himself if returned to his cell. Plaintiff reiterated his request for a crisis team member. At this point, Defendants Dalton and Eutsey walked off.

Plaintiff pleads that Defendants Dalton and Eutsey returned and "wanton[ly] and maliciously… removed" him.  Plaintiff pleads no particulars as to Defendants' actions, claiming only that while so doing, Defendants caused "mace injuries" to Plaintiff's "right hand and person." Plaintiff does not explain what he means by Mace injuries and does not actually plead that Mace was used against him. Plaintiff claims that Defendants acted pursuant to Administrative Directive 0501.126 instituted by Defendant Warden Kennedy.  Plaintiff does not explain the substance of the Directive and asserts only, that Defendants "used as a reason" not to use a security belt.

Plaintiff asserts that Defendants Harmon, Trusty, Tarter and Laborence were deliberately indifferent to his serious mental health needs, that Defendants Dalton and Eutsey exerted unconstitutional excessive force and that former Warden Kennedy failed to intervene.  Plaintiff requests, punitive, but not compensatory damages.

## ANALYSIS

Deliberate indifference to a serious medical need is also actionable under the Eighth Amendment.  *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).  "When the serious risk at issue is attempted suicide, a defendant acts knowingly and unreasonably if that defendant '(1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk.' This requires 'more than mere or gross negligence, but less than purposeful infliction of harm.'" *Conner v. Rubin-Asch*, 793 Fed. Appx. 427, 430 (7th Cir. 2019) (internal citations omitted).  While a "known risk" of suicide cannot be ignored, an "insincere" threat does not necessarily require action.  *Lord v. Beahm*, 952 F.3d 902, 904–05 (7th Cir. 2020).

Here, Plaintiff does not indicate a history of mental illness, depression, or prior attempts at suicide, so it is unclear whether Plaintiff's threat was credible, requiring referral to a mental health provider. The Court need not further consider this issue, however, as Plaintiff has failed to identify an injury he suffered due to Defendants' alleged failure to take seriously his threats of suicide. "In order to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.'" *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (emphasis in original), quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("[s]ection 1983 is a tort [and] [a] tort to be actionable requires injury.") A Plaintiff asserting such a claim must have some evidence of a recoverable injury. *Lord*, 952 F.3d at 905 (denying deliberate indifference claim related to "insincere" suicide attempt, finding that plaintiff's "scratches" were not sufficient to establish a recoverable injury). Plaintiff will be given an opportunity, however, to replead this claim.

Plaintiff also alleges that Defendants Dalton and Eutsey exerted incessive force against him. In an excessive force claim the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). "[W]hile a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, 'a claim ordinarily cannot be predicated on a *de minimis* use of physical force.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837–38 (7th Cir. 2001) (internal citations omitted).

The Court must balance the amount of the force used against the need for the force. If no force is necessary, even *de minimis* force may not be used. *Reid v. Melvin*, 695 Fed.Appx. 982, 983-84 (7th Cir. 2017). Here, Plaintiff has provided almost no information regarding the force used by Defendants Dalton and Eutsey. Plaintiff does not affirmatively plead that Mace was

deployed but claims to have suffered an unspecified Mace injury. Plaintiff had admittedly refused to return to his cell though ordered to do so multiple times. While it might be that some force might have been needed under the circumstances, the Court cannot determine whether Plaintiff has made a threshold showing that the force used was unnecessary, as he has not pled sufficient facts in that regard. Plaintiff will have an opportunity to replead this claim as well.

Plaintiff also names former Pontiac Warden Kennedy in her personal capacity. Plaintiff asserts that Defendant Kennedy issued an Administrative Directive on which Defendants allegedly relied when they cuffed Plaintiff behind his back. Plaintiff also asserts that Warden Kennedy failed to intervene, though he does not claim that she was present or had an opportunity to do so. The doctrine of *respondeat superior* does not apply to § 1983 claims. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). *See Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) ("to be liable under § 1983, the individual defendant must have 'caused or participated in a constitutional deprivation.'") As Plaintiff does not allege that Defendant Kennedy personally participated in the alleged deprivations, she is DISMISSED.

**IT IS THEREFORE ORDERED**:

1. Plaintiff's complaint is dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff shall have 30 days from the entry of this order to file an amended complaint. It is to be captioned Amended Complaint and is to state all of Plaintiff's claims without reference to a prior pleading. Failure to file an amended complaint will result in the dismissal of this case, without prejudice, for failure to state a claim. Defendant Kennedy is DISMISSED.

2. Plaintiff's motion for status [ECF 5] is rendered MOOT by this order. Plaintiff's motion for service of process [ECF 7], is DENIED.

<table>
<tr><td>5/22/2020<br>ENTERED</td><td>s/Joe Billy McDade<br>JOE BILLY McDADE<br>UNITED STATES DISTRICT JUDGE</td></tr>
</table>